## Safway Steel Scaffolds Company *v.* Clayton, Appellant.

Argued November 13, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James J. Boyle,* with him *Robert A. Rosin,* and *Ettinger, Gallagher & Silverman,* for appellants.

*Edward W. Madeira, Jr.,* with him *Pepper, Hamilton & Scheetz,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 7, 1964:

Appellants, Clayton and Allen, for several years prior to February, 1962, were employed in supervisory positions with appellee, Safway Steel Scaffolds Company. Safway is engaged in the business of the erection of steel scaffolding in the Philadelphia area.[1] In early February, 1962, the individual appellants terminated their employment with Safway, organized Bil-Jax of Pennsylvania, Inc., of which they were the principal officers, and entered the business of erecting steel

---

[1] Clayton participated in the preparation of estimates for bids and generally had access to all such company data and information. Allen served as foreman and had supervisory responsibility on the erection of scaffolding.

scaffolding, similar in nature to appellee's business and in direct competition with Safway.

Safway instituted an action in equity against the individual and corporate appellants to enjoin them from (1) utilizing certain confidential information gained by Clayton and Allen during their employment with Safway, (2) bidding on any jobs upon which Safway had submitted bids prior to the termination of their employment, and (3) competing unfairly with Safway. Appellee also requested that appellants account to Safway for the proceeds received by appellants from any jobs performed by them on which Safway had, prior to February 9, 1963, submitted bids.

As a result of several conferences, the parties compromised their differences. Counsel submitted a consent decree which the court approved on July 6, 1962. The presently material portion of the decree provided: "Within thirty days from Wednesday, June 27, 1962, said defendants [appellants] shall submit to the court, in accordance with rule 1530, an accounting for profits made by them or any of them on . . .." three designated jobs.

As directed by the consent decree, appellants submitted an accounting[2] prepared by a certifed public accountant, which covered the period of operations of Bil-Jax from January 1 to June 30, 1962, and dealt particularly with the three jobs which had been performed for the total price of $12,350. Appellants took credit for direct labor and rental of equipment costs on these jobs of $3,907.66. They also took credit for certain "indirect operating expenses" consisting of allocated portions of overhead during the six month period January 1-June 30, totalling $11,178.79.[3] Thus, the

---

[2] Described as "Statement of Operating Profit/(Loss) on Certain Designated Contracts."

[3] This allocation was based on the ratio of direct labor expended on these jobs to total direct labor expended by appellants

gross profit of $8,442.34 (before indirect operating expenses) was completely offset by the indirect operating expenses, and a loss was claimed.

Safway filed exceptions to the accounting. The court dismissed the exceptions to the credits claimed for direct rental of equipment and direct labor costs but sustained the exceptions to the credits claimed by appellants for indirect operating expenses. Judgment was entered for appellee in the amount of $8,442.34.

In this appeal, appellants challenge the propriety of the judgment entered against them. Their primary contention is that the court below entered judgment for gross profits rather than for "profits made" (if any) as directed by the consent decree. In determining profits, appellants urge that they applied generally accepted business accounting principles in ascertaining and fixing indirect expenses attributable to these jobs. Thus, a loss rather than a profit was reflected. In the absence of profits, no basis existed for the entry of the judgment.

In the consent decree, appellants agreed to submit an accounting "for profits made". There is no further clarification or explanation of this phrase. Appellee contends that the correct interpretation includes only direct expenditures for direct rental and direct labor

---

on all jobs during this period. The costs in this schedule of expenses for which credit was claimed by appellants include these 22 items: Officers compensation not charged direct (Superintendent and foreman), Sales engineer's salary, Other indirect labor (warehousing & unloading), Clerical Salary, Payroll taxes, Union welfare fund, Workmen's compensation insurance, Public liability and property damage insurance, Warehouse and office supplies purchased from petty cash, Rent (warehouse and office), Accounting, Gas, oil and maintenance of truck, Transportation allowances (employees and officers), Insurance on truck, Other insurance, Office supplies, Telephone, Telephone answering service, Paint office, Sales promotion, Miscellaneous corporate taxes (other than income), Subscriptions.

costs.  Appellants urge that credit should be given for both direct expenditures and the reasonable, proportionate allowances for indirect expenses (as listed by them but disallowed by the court below) incurred in performing the three contracts.

We may consider, for purposes of this controversy, that the opposing accounting theories advanced by the parties represent sound accounting practice and, for certain business purposes, may perhaps correctly determine profits in accordance with their respective interpretations.  Here, however, the issue to be resolved does not involve the acceptance or rejection of a particular accounting theory, practice or preference, but rather the application of generally accepted accounting principles and cost factors to the present factual situation in order to determine the presence or absence of profits as that term is used in the consent decree.

The court below held, without challenge, that appellants are entitled to take credit for all direct expenditures for rental equipment and other direct labor costs in the performance of the contracts.  In disallowing the 22 items claimed as deductions by appellants in their schedule of "indirect operating expenses",[4] the

---

[4] "These were calculated by the certified public accountant according to a rather involved formula which he sought to explain in a note to the Statement.[9]  ([9]This note reads as follows:  'Total operating expenses were first allocated to equipment sales, rentals and contract work in the same ratio as dollar value of sales of each category was to total dollar value of sales.  The expenses thus allocated to contract sales were then allocated to individual contracts in the same ratio as direct labor expended on each contract was to total direct labor expended on all contracts.'  [Footnote in the original.])  It is obvious that by this complex formula, the certified public accountant took every item of expense of operation incurred by Bil-Jax and charged an arbitrary proportion of each item against the three contracts, and came up with a minus sign.  We note that by using this rather capricious method of computation, the certified public accountant came up with charges against

court below correctly observed: "The profit and loss statement which the certified public accountant prepared might be a valid calculation for the benefit of shareholders or even for tax purposes, but it should not be regarded as a proper accounting to the plaintiff, to whom defendants owed an obligation to make proper restitution of moneys to which plaintiff (and not defendants) is entitled."

We believe that, on this record, the fair and proper manner of calculating profits here employed as a restitutional device is to disallow all but those costs directly incurred in completing the designated jobs. This requires the rejection of all pro forma calculations and apportionments of general overhead and administrative expenditures not definitely and specifically concerned with those contracts. Likewise excluded are all items of costs which appellants would have incurred during the accounting period even if these particular jobs had not been performed. No financial benefit or advantage may accrue to appellants by reduction in their fixed charges because of these jobs.

---

the three contracts as follows: officers' compensation $3,044.16; postage and supplies $690.03; rent, $843.17; and officers' and employees' transportation allowances, $1,568.30; and the certified public accountant set up similar calculations with respect to other miscellaneous charges.

"When this account is carefully analyzed, it is clear that during the first six months of its operation, Bil-Jax, like any business during its formative period, incurred sizeable expenditures in promoting and launching its undertaking. It is obvious that such expenditures ought not to be charged against the plaintiff in this case.

"We take particular note of the fact that charges for officers' compensation ($3,044.16) and transportation allowances ($1,568.30) were claimed as credits against the three jobs in question. The record discloses that the only officers of Bil-Jax are the two named individual defendants. Thus, it is not surprising that the statement here submitted as an accounting shows 'no profit'." (From the opinion of the court below.)

In our opinion, the only reasonable and realistic basis for determining profits in this instance is to restrict deductible costs to direct, out-of-pocket expenditures directly and specifically attributable to the jobs in question. This includes only those costs exclusively incurred and solely chargeable to these jobs, other than fixed costs. Stated another way, appellants are entitled to credit for only those direct expenditures they would have avoided or would not have been obliged to make had they not performed the contracts.

In examining the account filed and, particularly, the indirect operating expenses disallowed, the record submitted is not sufficiently complete to enable us to determine the propriety of the rejection of all claimed credits itemized in the indirect expense schedule. Our review of these items indicate that some[5] may include both fixed and direct costs. To the extent that appellants establish by appropriate evidence the portion of direct costs (if any) attributable to these jobs but included in the indirect operating expense schedule, they are entitled to additional credit for such expenditures.

The judgment of the court below is vacated and this matter is remanded for further proceedings in accordance with this opinion, after which the court below is directed to enter judgment for appellee in such amount as the court shall determine.

---

[5] Such as payroll taxes, union welfare fund, workmens' compensation insurance, warehouse and office supplies purchased from petty cash, gas, oil and maintenance of trucks, transportation allowances, and telephone.